Pearson, J.
It concerns the public that all who commit felonies should be punished ; hence, compounding a felony is a misdemeanor, and the law encourages every one, as well private citizens as officers, to keep a sharp look-out for the apprehension of felons, by holding them exempt from responsibility for an arrest, or prosecution, although the party charged turns out not to be guilty, unless the arrest is made, or the prosecution is instituted, without probable cause and from malice.
In our case actual malice was not alleged, and the main question was the existence of probable cause.
Had a seal been affixed to the warrant of the justice of the peace, so as to compel the plaintiff to sue in case, for a malicious prosecution, from the evidence it is clear there could have been no question that the plaintiff had probable cause; so the amount of the case is, that by the accidental omission, on the part of the magistrate, to affix a seal after signing his name, the defendant must not only pay the cost, but is mulcted in damages to the amount of $200, without reference to the question of malice or probable cause. This result cannot be right.
Admit that the want of a seal put the warrant out of the way, and enabled the plaintiff to sue in trespass for the false imprisonment, so as to be entitled, without more showing, to nominal damages, yet, surely, he could only entitle himself to actual damages, on the ground that the defendant had acted maliciously and without probable cause; so, the want of a seal ought only to have affected the form of action, whereby to subject the defendant to nominal damages and costs, leaving the merits of the case to turn on the question of probable cause.
In regard to this, we take a different view from that entertained by his Honor; we think there was some evidence tending to show probable cause. On the 22nd of February, *438 1855, a horse, the property of one McLeod, is stolen in the town of Charlotte; thus we have a felony committed ; suspicion rests upon a man named Clary, who is seen and heard of no more. A brother of McLeod goes to the Huie Mine, eighteen miles from Charlotte, in search of Clary, and is there informed that a man calling himself Brockway had been at the mine about the time the horse was stolen; “ the description of the clothes and the personal appearance, resembled Clary very closely.” Mr. McLeod was so well satisfied that he was the same man, that he pursues on to Salisbury. A reward of one hundred dollars is, in the meantime, offered for the apprehension of the felon. In Salisbury, McLeod meets with the defendant; gives him a full account of the felony; of Clary’s being suspected, and having absconded; of the advertisement ; of the fact that a man calling himself Brockway (who, in dress and personal appearance, closely resembled the man Clary,) had been at the Huie mine about the time the horse was stolen, and was then, as he learned, at the Eymer mine, about six miles from Salisbury, and asks the defendant to go that night Avith him, and have the said Brock-way arrested, and brought before a justice of the peace for examination. The defendant hesitates; but Calvin S. BroAvn arrives from Charlotte; he had procured a description of Clary, and confidently expresses the belief that the plaintiff is the man. Esquire I). A.' Davis and Esquire John I. Shaver, upon these pregnant proofs, as they were supposed to be, on all hands, expressed their opinion that Brockway AAas the man Clary, passing under an alias; Avlieroupon he is arrested that night; but without any kind of oppression or delay, he is forthwith brought before a magistrate, and there being no proof that he is the mail, is accordingly discharged.
"What has the plaintiff (if he be a good citizen,) to complain of? A felony is committed, and the felon escapes; he is ad-A^ertised, and a reward of one hundred dollars is offered for his apprehension. The plaintiff bears a close resemblance, both in dress and personal appearance, to the suspected person ; his associations and fixedness in his position as a mem *439 her of the community, do not place Mm above the marks of honest suspicion which attach to him because of the close resemblance to the man who figures under the reward of one hundred dollars, as a fugitive from justice. Has he cause to complain ? Ought he not rather to congratulate himself that he lives in a land where justice is administered with a steady hand. And if occasionally “ the wrong passenger is waked up,” every good citizen should bear in mind that it was meant for the best, and will work around for the good of the whole.
Samuel v. Paine, Doug. 359; Beckwith v. Philby, 6 B. and C. 635 ; Davis v. Russell, 5 Bing. 354, are cases of the highest authority, showing that, upon proof much short of that offered by the defendant in our case, the Courts in England hold, that an officer or a private individual may justify the arrest of a suspected person for the purpose of bringing him before a committing magistrate, provided there be proof that a felony has been committed. Much might be said as to the effect of our bill of rights upon the ex-officio powers of a sheriff or constable, who acts without warrant, and when there is no immediate apprehension that an escape will be attempted before one can be obtained from a justice of the peace. But a discussion of this matter is not now called for.